ON OBJECTIONS TO THE MAGISTRATE'S DECISION DECISION
{¶ 1} Relator, York International Corporation, has filed an original action in mandamus requesting this court to issue a writ of mandamus to order respondent, Industrial Commission of Ohio ("commission"), to vacate its order that granted permanent total disability compensation to respondent-claimant, Fay H. Kopis ("claimant"), and to issue a new order finding claimant is not entitled to such compensation.
 {¶ 2} This court referred the matter to a magistrate, pursuant to Civ.R. 53(C) and Section (M), Loc.R. 12 of the Tenth District Court of Appeals, who rendered a decision including findings of fact and conclusions of law. (Attached as Appendix A.) The magistrate decided that a limited writ of mandamus should be granted to order the commission to vacate its order and issue a new order after addressing the issue of the potential effect of claimant's departure from the work force on her entitlement to permanent total disability compensation.
 {¶ 3} Relator and claimant have filed objections to the magistrate's decision. In its objections, relator argues that the commission abused its discretion in relying on the June 6, 2002 report of Dr. Rudy G. Moc, that Dr. Raymond D. Richetta's report was not some evidence, and that the commission failed to address the claimant's failure to participate in a rehabilitation program.
 {¶ 4} Claimant objects to the magistrate's conclusion that the commission was required to address the issue of whether she voluntarily retired from the work force.
 {¶ 5} In the first instance, we note that the correct date of the report for Dr. Moc is July 8, 2002, not June 6, 2002, as stated in relator's objections. In Dr. Moc's narrative report, he correctly lists all of the allowed conditions of claimant's claim, his examination was based on those conditions, and his opinion that she was permanently and totally disabled was based only on the allowed conditions of her claim. While the physical capabilities restriction form placed other restrictions on claimant that related to nonallowed conditions, Dr. Moc did restrict the use of her left arm and stated she was unable to use her left hand, which are allowed conditions of her claim. We further find the staff hearing officer did not reject Dr. Moc's report, inasmuch as he found all the medical reports to be credible to some extent and, therefore, based the decision to grant permanent total disability compensation on non-medical factors. Relator also objects to the commission's reliance on the report of Dr. Richetta, because he reviewed 1991 and 1999 reports when other medical reports in the record were more contemporaneous in time. Relator argues reliance on Dr. Richetta's report is barred based on State ex rel. Bozeman v. Unisource Corp., Franklin App. No. 01AP-1484, 2003-Ohio-747. However, we agree with the magistrate's conclusion that Bozeman applies only when compensation is based on psychological allowances, which is not the situation here.
 {¶ 6} Relator also argues that the commission failed to address claimant's failure to participate in a rehabilitation program. Although the magistrate found this issue was not raised before the commission, we agree with relator that the issue was raised in its motion for reconsideration and should be addressed by the commission upon remand. To this extent, relator's objections to the magistrate's decision are sustained.
 {¶ 7} Claimant objects to the magistrate's conclusion that the commission was required to address the issue of whether she voluntarily abandoned the work force. We find the magistrate correctly addressed and analyzed this issue and claimant's objections are overruled.
 {¶ 8} Therefore, upon a review of the magistrate's decision and an independent review of the record, we find that the commission abused its discretion by failing to address claimant's failure to participate in a rehabilitation program, as well as failing to address the issue of whether claimant voluntarily abandoned the work force. Therefore, this court grants a writ of mandamus to order respondent, Industrial Commission of Ohio, to vacate its decision that granted permanent total disability compensation to respondent-claimant, Fay H. Kopis, and to issue a new order which grants or denies such compensation and sets forth the basis for its decision.
Relator's objections overruled in part and sustained in part,claimant's objections overruled, writ of mandamus granted.
Bryant and Sadler, JJ., concur.
Bowman, J., retired of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.
 APPENDIX A IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
State of Ohio ex rel. : York International Corporation, :
Relator, :
v. No. 04AP-979 :
The Industrial Commission of Ohio (REGULAR CALENDAR) and Fay H. Kopis, :
Respondents. :
 MAGISTRATE'S DECISION Rendered on April 11, 2005 Buckley King LPA, and Michael J. Spisak, for relator.
Jim Petro, Attorney General, and Lasheyl N. Sowell, for respondent Industrial Commission of Ohio.
Lester S. Potash, for respondent Fay H. Kopis.
 IN MANDAMUS {¶ 9} Relator, York International Corporation, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which granted permanent total disability ("PTD") compensation to respondent Fay H. Kopis ("claimant") and ordering the commission to find that claimant is not entitled to that compensation. In the alternative, relator requests that this court issue a limited writ of mandamus compelling the commission to vacate its prior order, conduct further proceedings in this matter, and thereafter to issue an order which complies in all respects with the requirements of the law.
Findings of Fact:
 {¶ 10} 1. Claimant sustained three work-related injuries while employed with relator. Claim number 832376-22 has been allowed for: "amputation distal phalanx left index finger; post traumatic stress disorder; strain left shoulder with fibrositis." It is undisputed that these are the conditions upon which claimant's application for PTD compensation was based. Claim number L233227-22 has been allowed for: "fracture right fourth rib." Claim number OD58385 is a claim which has been settled and includes the allowed condition of: "bilateral carpal tunnel syndrome."
 {¶ 11} 2. Claimant received various periods of temporary total disability compensation over the years for the allowed physical conditions.
 {¶ 12} 3. Claimant returned to work for relator at the same machine at which she was injured and continued working there until 1993.
 {¶ 13} 4. Between 1993 and 1996, claimant worked in a variety of different positions and was off work for different periods of time as well.
 {¶ 14} 5. In November 1996, claimant was placed in a new position created by relator and the union for employees who are not able to return to their former position of employment. In this position, claimant collected punch tickets from tow motor operators and entered relevant data into a computer with her right hand. Claimant worked in that position until May 1997 when she went on medical leave because of difficulty she was having with her right hand.
 {¶ 15} 6. By letter dated September 30, 1999, claimant was informed that relator had no jobs which would fit her capabilities and/or restrictions.
 {¶ 16} 7. On August 23, 2003, claimant filed an application for PTD compensation. According to the application, claimant last worked on May 5, 1997. Claimant indicated that she could read and perform basic math; however, she indicated she did not write well.
 {¶ 17} 8. In support of her application, claimant submitted reports from Raymond D. Richetta, Ph.D., and Rudy G. Moc, M.D. In his June 20, 2002 report, Dr. Richetta opined: claimant is mildly to moderately impaired relative to activities of daily living; moderately impaired relative to her concentration and her ability to persist with activities; moderately impaired relative to her social functioning; she is unable to tolerate day-to-day demands of the workplace; is unable to cope with interpersonal dynamics of the workplace; and that claimant was permanently and totally impaired from any work-related activity. In his July 8, 2002 report, Dr. Moc listed his physical findings and opined that claimant was unable to perform substantial, gainful employment and is permanently and totally disabled. Dr. Moc completed a physical capabilities evaluation wherein he indicated that: claimant could stand for six and one-half to eight hours, walk four and one-half to six hours, and sit one to three hours; could lift between six to ten pounds with her right arm and lift between one and five pounds with her left arm occasionally during a work day; was unrestricted in the use of her right hand but unable to use her left hand for simple grasping, pushing and pulling, and fine manipulation; could frequently bend, occasionally squat, and was prohibited from crawling and climbing; and that claimant was unable to lift above shoulder level with her left arm.
 {¶ 18} 9. The record also contains the October 8, 2002 report of Kim L. Stearns, M.D., who indicated that claimant would not permit her to touch her left arm. Dr. Stearns estimated that claimant had a 14 percent whole person impairment, and indicated that she would have the following restrictions relative to her left arm: no lifting above five pounds; no overhead lifting; some limited use regarding fine manipulation; and that she was very limited regarding the use of her upper extremity.
 {¶ 19} 10. Claimant was examined by Steven J. Zuchowski, M.D., whose October 20, 2002 report is contained in the record. Dr. Zuchowski opined that claimant had a ten percent impairment relative to her post-traumatic stress disorder and indicated that her allowed psychological condition was not work prohibitive.
 {¶ 20} 11. The record also contains the January 3, 2003 report of John G. Nemuneitis, M.D., who opined that claimant had a 29 percent impairment for her allowed physical conditions and opined that she was capable of light-duty work.
 {¶ 21} 12. A labor market access report was prepared by Daniel Simone who opined that claimant had a total inability to perform substantial gainful employment based upon her physical limitations as well as her extensive psychological limitations.
 {¶ 22} 13. Claimant's application for PTD compensation was heard before a staff hearing officer ("SHO") on June 12, 2003. Both claimant and relator filed proposed orders with the commission for the SHO to consider. Ultimately, the SHO rendered a decision awarding PTD compensation to claimant, solely under her 1982 claim (allowed for amputation distal phalanx left index finger; post-traumatic stress disorder; strain left shoulder with fibrositis), beginning June 7, 2002. The SHO indicated that the decision was based upon the medical reports of Drs. Richetta and Moc and the vocational report of Mr. Simone. After listing claimant's allowed conditions, providing detail of her treatment and surgeries, the SHO stated as follows:
While Dr. Moc and Dr. Richetta opine that the claimant is permanently and totally disabled, credible medical reports are contained in the file from physicians who find that the claimant is capable of sedentary to light work due to the allowed conditions in Claim No. 832376-22.
Thereafter, the SHO addressed the other medical evidence in the record, including the reports of Drs. Stearns, Nemuneitis and Zuchowski. The SHO concluded as follows:
Because the medical reports covering the claimant's physical and psychological impairments conclude, and the Staff Hearing Officer has herein found, that the claimant can work in a sedentary or light capacity, it is necessary to look at the non-medical disability factors in this claim.
The commission then considered the nonmedical disability factors and provided the following relevant explanation for the decision:
The Staff Hearing Officer finds, first, that the claimant cannot return to her former position of employment or any job she has ever performed because of her physical limitations. Her job as a machine operator was medium strength level job. Her other past jobs listed on the vocational reports were also either of medium strength level (assembly, packer) or heavy strength level (laborer) except her year as a waitress 40 years ago. While characterized as "light", the Staff Hearing Officer finds that a person who has extremely limited use of her left upper extremity would have an extremely difficult time performing a two handed job such as a waitress.
Second, the Staff Hearing Officer finds that the claimant has no transferable job skills. Mark Anderson and Daniel Simone both state that the claimant has no transferable job skills.
In addition, the Staff Hearing Officer finds that the claimant has marked psychological limitations, which further restrict her ability to reenter the labor market. Per Dr. Richetta, she has restrictions in all four areas of primary functioning and especially in the area of adaptation to stress and work ability (p. 4). The Staff Hearing Officer agrees with Daniel Simone that the claimant would experience difficulty performing more than simple tasks in a lowered stress environment which did not require a great deal of contact with other individuals.
The Staff Hearing Officer finds that the claimant is now 58 years old, a person of middle age. The claimant is at an age where traditional vocational rehabilitations are not recommended. The Staff Hearing Officer agrees with Daniel Simone who states on p. 2, ". . . in order for Ms. Kopis to successfully return to work it would require that she make a significant amount of vocational adjustment."
The claimant completed the 11th grade and obtained her G.E.D. indicating she should have some work adjustment issues in adjusting to new jobs and/or work settings per Mark Anderson (p. 3).
The Staff Hearing Officer concludes that the claimant has marked physical limitations that prevent her from returning to her former positions of employment or to any job which she has held in the past; that the claimant has no transferable job skills; that the claimant has extensive psychological limitations that further impair her ability to work; that the claimant is now 58 and is past the age at which vocational training is indicated; and that all of the above factors combine to prevent the claimant from returning to substantial gainful employment and she is, therefore, permanently and totally disabled.
Permanent and total disability compensation is to commence on 06/07/2002 because Dr. Moc examined the Injured Worker on that date and found permanent and total disability.
It is further ordered that the above award be allocated as follows: 100% of the award is to be paid under Claim Number 832376-22.
 {¶ 23} 14. Relator's request for reconsideration was denied by order of the commission mailed December 12, 2003.
 {¶ 24} 15. Thereafter, relator filed the instant mandamus action in this court.
Conclusions of Law:
 {¶ 25} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show that she has a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. State ex rel. Pressley v.Indus. Comm. (1967), 11 Ohio St.2d 141. A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. State ex rel. Elliott v. Indus. Comm. (1986), 26 Ohio St.3d 76. On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. State ex rel. Lewis v. Diamond Foundry Co. (1987),29 Ohio St.3d 56. Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. State ex rel. Teece v. Indus. Comm. (1981), 68 Ohio St.2d 165.
 {¶ 26} The relevant inquiry in a determination of permanent total disability is the claimant's ability to do any sustained remunerative employment. State ex rel. Domjancic v. Indus. Comm. (1994),69 Ohio St.3d 693. Generally, in making this determination, the commission must consider not only medical impairments, but also the claimant's age, education, work record and other relevant nonmedical factors. State ex rel. Stephenson v. Indus. Comm. (1987),31 Ohio St.3d 167. Thus, a claimant's medical capacity to work is not dispositive if the claimant's nonmedical factors foreclose employability. State ex rel. Gay v. Mihm (1994), 68 Ohio St.3d 315. The commission must also specify in its order what evidence has been relied upon and briefly explain the reasoning for its decision. State ex rel.Noll v. Indus. Comm. (1991), 57 Ohio St.3d 203.
 {¶ 27} Relator challenges the commission's order in several respects: (1) the commission's failure to address the issue of whether claimant's departure from the workplace precluded her from receiving PTD compensation; (2) the commission based its award of PTD compensation, in part, upon nonallowed conditions; (3) the commission implicitly rejected the report of Dr. Moc and then alternatively relied upon that report; (4) the reports of Drs. Moc and Richetta do not constitute "some evidence" upon which the commission could rely; (5) the commission relied upon vocational evidence which was factually inaccurate; (6) the commission abused its discretion by issuing an order which was a verbatim copy of claimant's proposed order; and (7) the commission failed to discuss claimant's failure to participate in a rehabilitation program.
 {¶ 28} Relator's first argument, that the commission abused its discretion by failing to address claimant's departure from the workplace and the potential consequences of that on her eligibility for PTD compensation, has merit. In State ex rel. Kinnear Div., Harsco Corp. v.Indus. Comm. (1997), 77 Ohio St.3d 258, 261, the Supreme Court of Ohio stated as follows:
Retirement taken before an employee becomes permanently and totally disabled can affect the employee's right to PTD compensation, "if the retirement is voluntary and constitutes an abandonment of the entire job market." State ex rel. Baker Material Handling Corp v. Indus. Comm.
(1994), 69 Ohio St.3d 202, * * * paragraph two of the syllabus. * * * Retirement taken while claimant is disabled, but not permanently andtotally disabled, may still affect the claimant's eligibility for PTD compensation. Thus, the nature and extent of a claimant's pre-PTD retirement are issues upon which the commission's order must provide adequate evidentiary explanation and identification.
(Emphasis sic.)
 {¶ 29} Although relator asserts that it is clear that claimant retired from the workforce for reasons unrelated to her allowed conditions, the magistrate finds that this is not an accurate reflection of the record. Instead, claimant testified at the PTD hearing that the utilities rehabilitation job she was performing, which consisted of right handed data entry on a computer, ultimately caused her pain in her right hand. As a result, claimant was placed on medical leave. Thereafter, by letter dated September 30, 1999, claimant was informed by relator that there were no jobs within her physical capabilities. As such, the effect of claimant's departure from the workforce may or may not have a negative impact on her entitlement to PTD compensation. Because this issue was raised by the employer at the PTD hearing, the commission had the obligation to address the issue, but failed to do so. To this extent, a limited writ of mandamus is appropriate ordering the commission to consider the effect of claimant's departure from the workforce on her entitlement to PTD compensation.
 {¶ 30} Relator also contends that the commission awarded PTD compensation, in part, on nonallowed conditions. It is axiomatic that a claimant cannot be compensated for a disability which is caused by conditions unrelated to their injury and resulting from nonallowed medical conditions. State ex rel. Waddle v. Indus. Comm. (1993),67 Ohio St.3d 452; State ex rel. Bradley v. Indus. Comm. (1997),77 Ohio St.3d 239. Relator contends that it is clear that the commission based its award of PTD compensation, in part, upon the nonallowed condition of major depression. This magistrate disagrees.
 {¶ 31} In his June 20, 2002 report, Dr. Richetta properly notes the allowed conditions at the outset of his discussion. Dr. Richetta opined that relator continues to suffer from post-traumatic stress disorder and that her symptoms include "nightmares, preoccupation, irritable mood, depression, etc." In his report, Dr. Richetta never states that claimant is suffering from the condition "depression." Instead, Dr. Richetta properly lists the only allowed psychological condition in the claim, post-traumatic stress disorder. The fact that "depression" is a symptom of post-traumatic stress disorder is not evidence that Dr. Richetta opined that she was disabled, in part, based upon depression as a nonallowed condition. This court can take judicial notice the fact that a certain amount of depression can be a symptom of another psychological disorder even though an injured worker's claim would not be allowed for "depression" as an allowed condition. As such, the magistrate finds that relator's argument fails in this regard.
 {¶ 32} Relator contends further that the commission abused its discretion by implicitly rejecting the report of Dr. Moc and then alternatively relying upon that report. At the outset, the magistrate notes that the commission's order appears, at first, to be somewhat confusing because the SHO indicated that the order was based particularly upon the reports of Drs. Richetta and Moc who opined that claimant was permanently and totally disabled as a result of her allowed conditions. Thereafter, the commission went on to cite and discuss the reports of Drs. Stearns, Nemunaitis, and Zuchowski and ultimately concluded that the claimant was capable of sedentary or light-duty work. The hearing officer explains this by noting that he found all of those medical reports to be credible to a certain extent.
 {¶ 33} Relator's complaint regarding the report of Dr. Moc arises from the fact that, in spite of the fact that the commission disagreed with Dr. Moc's conclusion that claimant was permanently and totally disabled solely as a result of the allowed physical conditions, the commission used June 7, 2002, the date of Dr. Moc's report, as the start date for PTD compensation. Relator contends that the commission implicitly rejected Dr. Moc's conclusion that claimant was permanently and totally disabled and that, pursuant to State ex rel. Zamora v. Indus. Comm.
(1989), 45 Ohio St.3d 17, the commission was thereafter precluded from relying on his report at all. Pursuant to State ex rel. Ewart v. Indus.Comm. (1996), 76 Ohio St.3d 139, the commission has the discretion to reject the ultimate conclusion of a report yet accept some of the findings contained therein to draw its own conclusion. As such, the magistrate finds that it was not an abuse of discretion for the commission to use the date of Dr. Moc's report as the start date for claimant's receipt of PTD compensation.
 {¶ 34} Relator also challenges the commission's reliance upon the reports of Drs. Moc and Richetta. First, relator contends that the commission abused its discretion by relying on the December 12, 1999 report of Dr. Moc. However, as claimant indicates, it was Dr. Moc's June 6, 2002 report which she submitted in support of her application for PTD compensation. Furthermore, nowhere in the commission's order does the commission indicate that it referred to the December 12, 1999 report of Dr. Moc at all. As such, relator's argument that this report of Dr. Moc was not based on objective findings lacks merit as that report was not relied upon.
 {¶ 35} Relator also challenges Dr. Richetta's report because he lists 1991 and 1999 reports as having been reviewed without noting other medical reports, more contemporaneous in time, relative to claimant's physical and psychological conditions. Relator has not cited any case law which would require an examining physician to review and discuss all other medical records in the file because no such case law exists. Instead, in this case, Dr. Richetta examined claimant and rendered his opinion. Relator also cites State ex rel. Bozeman v. The Unisource Corp.,
Franklin App. No. 01AP-1484, 2003-Ohio-747, and argues that since the commission was required to focus on the claimant's psychological condition at the time of her retirement, Dr. Richetta's report cannot constitute some evidence. However, Bozeman only applies where the commission grants PTD primarily based upon psychological allowances. In the present case, the commission found claimant capable of performing sedentary to light-duty work and then granted PTD compensation only after analyzing the nonmedical factors. As such, relator's argument fails.
 {¶ 36} Relator also challenges the commission's reliance upon the vocational report of Mr. Simone. First, relator argues that the hearing officer stated that both Mr. Simone and Mr. Anderson, who authored another vocational report, stated that claimant had no transferable job skills. Relator contends that Mr. Anderson never made this conclusion and instead indicated there would be a number of potential job opportunities available to claimant at the sedentary to light levels of exertion. Relator's argument is somewhat correct and yet does not render the commission's order defective. Upon review, the magistrate finds that Mr. Anderson's vocational report is silent as to whether or not the claimant has any transferable skills. As such, the commission would be correct that Mr. Anderson did not indicate whether claimant had transferable skills while Mr. Simone specifically stated that claimant does not have any transferable skills.
 {¶ 37} Relator also contends that the vocational report of Mr. Simone contains factual inaccuracies on critical issues, exaggerates claimant's restrictions and, in some cases, completely distorts the truth. (Relator's brief, at 17.) While the commission does note that it relied upon the vocational report of Mr. Simone, the magistrate notes that the hearing officer also conducted his own analysis of the nonmedical factors. Because the commission has discretion to accept one vocational report while rejecting another, and because the commission can reject vocational reports all together and conduct its own analysis of the nonmedical factors, see State ex rel. Jackson v. Indus. Comm. (1997),79 Ohio St.3d 266, the magistrate finds that this particular challenge to the commission's report lacks merit. The commission's analysis of the nonmedical disability factors complies with the requirements of Noll,
supra. The commission found that, at 58 years of age, claimant is at an age where traditional rehabilitation services are not recommended. Furthermore, the hearing officer concluded that while claimant had completed the 11th grade and obtained her G.E.D., she would have some work adjustment issues in adjusting to new jobs and/or work settings. The commission cited the vocational report of Mr. Anderson for this conclusion. The commission also noted that claimant has marked physical limitations which prevent her from returning to her former position of employment, that she has no transferable job skills, and that she has extensive psychological limitations that further impair her ability to work. Based upon all those factors, the commission found that she was permanently and totally disabled.
 {¶ 38} Relator also challenges the fact that the commission essentially adopted the proposed order submitted by claimant. First, upon review, the magistrate notes that the commission's order is not a verbatim copy of claimant's proposal. Second, the Supreme Court of Ohio is not opposed of the use of orders drafted by a party to proceedings. Specifically, in State ex rel. Unger v. Indus. Comm. (1994),70 Ohio St.3d 672, the court considered the validity of an order that was based on a draft submitted by the employer. As noted above, the commission is responsible for evaluating and ratifying an order, and is free to accept, reject, or ratify an order provided that such indicates the commission's agreement that the conclusion present therein are the conclusions of the commission. As such, this argument of relator fails as well.
 {¶ 39} Relator also challenges the commission's order for its failure to discuss claimant's failure to participate in a rehabilitation program. First, the magistrate notes that relator did not present this issue to the commission at the hearing. Pursuant to State ex rel. QuartoMining Co. v. Foreman (1997), 79 Ohio St.3d 78, reviewing courts do not have to consider an error which the complaining party could have called, but did not call, to the commission's attention at a time when it could have been avoided or corrected.
 {¶ 40} Relator cites State ex rel. Bowling v. Natl. Can Corp. (1996),77 Ohio St.3d 148, in support for its argument. In Bowling, 15 years had elapsed between the time the plant closed and the claimant's application for PTD compensation. Furthermore, the claimant was only 47 years old when the plant shut down. In the present case, claimant stopped working in May 1997, was notified in May 1999 by relator that there were no jobs available within claimant's restrictions, and filed her application for PTD compensation in August 2002. As such, there were five years from the date she last worked and three years from the date relator informed her that there were no other jobs available for her within her restrictions. Furthermore, claimant testified that she looked for other work in the interim. These facts make this case distinguishable from Bowling. As such, this argument fails as well.
 {¶ 41} Based on the foregoing, this magistrate does conclude that the commission abused its discretion by failing to examine and discuss the potential effects of claimant's departure from the workforce on her entitlement to PTD compensation, and a limited writ of mandamus is warranted in the present case for the commission to consider this. However, the other errors which relator raises are found not to have merit and do not warrant the granting of a writ of mandamus. As such, it is the magistrate's decision that this court should grant a limited writ of mandamus ordering respondent Industrial Commission of Ohio to vacate its order which granted claimant's application for PTD compensation and order the commission to issue a new order, either granting or denying the compensation requested, after addressing the issue of the potential effect of claimant's departure from the workforce on her entitlement to PTD compensation.